UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNION STREET CORRIDOR-<br>COMMUNITY DEVELOPMENT<br>CORPORATION<br>    Plaintiff,<br><br>v.<br><br><br>SANTANDER BANK, N.A.<br>    Defendant | Civil Action No.: 1:16-cv-1044-DPW |

**DEFENDANT SANTANDER BANK, N.A.'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant Santander Bank, N.A., f/k/a Sovereign Bank, N.A. ("Santander"), pursuant to Fed. R. Civ. P. 12(b)(6), respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff Union Street Corridor – Community Development Corporation's ("Union Street") Complaint.

## INTRODUCTION

On or around October 4, 2007, Union Street opened a business bank account with Santander.[1] *See* Plaintiff's Complaint at ¶ 7. In conjunction with its account with Santander, Union Street identified certain people on a signature card that were considered to be authorized signees to the Union Street account. *Id.* at ¶ 32. According to Union Street, the following individuals were not authorized signers:

- Michael Phelps, the President of the Union Street Board as of June 2012. *Id.* at ¶¶ 20-22.

---

[1] Santander accepts as true the allegations contained in Plaintiff's Complaint only for the purpose of the instant motion.

1

- Edward Battle, who was elected to the Board of Union Street, and later became Vice President. *Id.* at ¶¶ 23-25; *see also* November 2, 2015 Demand Letter at pp. 1-2, attached hereto as Exhibit A.[2]

- Norman Cole, who was elected to the Board of Union Street. Complaint at ¶¶ 26-27.

- Steve Godfrey. *Id.* at ¶¶ 28-29.

From November 29, 2011 to July 13, 2015, however, Phelps, Battle, Cole and Godfrey wrote and signed 97 checks which were subsequently paid by Santander. *Id.* at ¶ 31. Union Street claims that $143,191.77 in funds as a result of these 97 checks were paid by Santander. *Id.* at ¶ 15. Union Street further claims that the first time Santander paid a check signed by Phelps was on November 15, 2013; by Battle on August 6, 2012; by Cole on February 15, 2012; and by Godfrey on November 29, 2011. *See* Exhibit A at pp. 2-7. Santander sent bank statements to Union Street for every month during November 29, 2011 to July 13, 2015. *See* Bank Statements (November 2011 to August 2015), attached hereto as Exhibit B.[3] It was not until November 2, 2015 that Union Street, for the very first time, notified Santander of the 97 checks executed by the unauthorized signers Phelps, Battle, Cole and Godfrey. *See* Exhibit A.

## PROCEDURAL BACKGROUND

Union Street filed its Complaint in the Superior Court for Essex County on or about February 2, 2016, and effected service of the Complaint on Santander on or about February 3,

---

[2] Santander attaches Union Street's November 2, 2015 "Demand Letter" sent to Santander for the Court to review without converting the instant motion to dismiss into a motion for summary judgment, as the Demand Letter is relied upon by Union Street to support Count III (M.G.L. c. 93A) of the Complaint. Further, the date that Plaintiff sent the Demand Letter is integral to arguments raised in the instant motion and the Demand Letter lists and attaches as copies each of the 97 checks that Union Street claims were signed by Phelps, Battle, Cole and Godfrey. "A court may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment." *In re Credit Suisse-AOL Sec. Litig.*, 465 F. Supp. 2d 34, 38 (D. Mass. 2006); *Swack v. Credit Suisse First Boston*, 383 F. Supp. 2d 223, 232, fn. 9 (D. Mass. 2004).

[3] Santander attaches the bank statements it sent to Union Street for the months November 2011 to July 2015 for the Court to review without converting the instant motion to dismiss into a motion for summary judgment. *See* Note 2, *supra,* for authority.

2016.  Union Street brought four (4) causes of action against Santander:  Count I (Negligence); Count II (Fraud); Count III (93 Unfair or Deceptive Conduct); and Count IV (Breach of Contract).  On February 24, 2016, Santander filed an Assented-To Motion for Extension of Time to Respond to the Complaint, setting March 9, 2016 as the new deadline.  On February 26, 2016, the Essex County Superior Court endorsed Santander's Assented-To Motion.

On March 2, 2016, Santander timely removed this matter to the United States District Court for the District of Massachusetts based on diversity jurisdiction pursuant to 28 U.S.C. § 1332.

## ARGUMENT

**I.     THE RULE 12(b)(6) TEST COMPELS DISMISSAL.**

To survive a Rule 12(b)(6) motion to dismiss "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hochendoner v. Genzyme Corp.,* 2015 WL 1333271, at *3 (D. Mass. Jan. 2015) (J. Woodlock) (citing *Ashcroft v.Iqbal,* 556 U.S. 662,678 (2009)).  The court first should "identify [] and disregard[] statements in the complaint that merely offer 'legal conclusion[s] couched as ... fact' or '[t]hreadbare recitals of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007).  Then, a court should look at the remaining factual allegations in the complaint "to evaluate whether, taken as a whole, they state a facially plausible legal claim." *Id.*

"Naked assertion[s]' devoid of 'further factual enhancement" do not constitute adequate pleading." *Coyne* v. *Metabolix, Inc.,* 943 F. Supp. 2d 259,265 (D. Mass. 2013) (J. Woodlock) (citing *Twombly,* 550 U.S. at 557).  Additionally, "'conclusory allegations' and bare assertions... amount[ing] to nothing more than a 'formulaic recitation of the elements' are not entitled to the presumption of truth." *Coyne,* 943 F. Supp. 2d at 265 (citing *Ashcroft v. Iqbal,* 556 U.S. 662,678

(2009)). "Unless the alleged facts push a claim 'across the line from conceivable to plausible,' the complaint is subject to dismissal." *Coyne,* 943 F. Supp. 2d at 265 (citing *Iqbal,* 556 U.S. at 678).

"Dismissal for failure to state a claim is appropriate when the pleadings fail to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Hochendoner,* 2015 WL 133327, at *3.

II. **THE MA UCC BANK STATEMENT RULE PRECLUDES UNION STREET FROM RECOVERY ON ALL 97 CHECKS.**

The Bank Statement Rule bars Union Street's claims for all 97 checks. ***First***, the Repeater Rule bars all claims concerning unauthorized signatures on checks by the same unauthorized signer that occurred more than thirty (30) days after receiving the November 2011 (Godfrey), February 2012 (Cole), August 2012 (Battle) and November 2013 (Phelps) bank statements that identified the first checks from the four unauthorized signers. M.G.L. c. 106, § 4-406(d)(2). ***Second***, the One Year Rule imposed by M.G.L. c. 106, § 4-406(f) bars Union Street from recovering for all checks (77 out of 97) identified in the October 2014 and earlier bank statements.

A. **The Repeater Rule Bars Union Street From Recovering for Any Checks Drawn on Union Street's Account More Than 30 Days After Receiving Bank Statements from Santander.**

The Bank Statement Rule statutorily requires customers to review their bank statements and report any unauthorized transactions within a reasonable time, or customers are precluded from holding the bank liable for those transactions. Massachusetts Gen. Laws, Chapter 106, Section 4-406, requires banks to provide account holders with notice that the bank has paid a check:

> A bank that sends or makes available to the customer a statement of account showing payment of items for the account shall either return or make available to the customer the items paid or provide information in the statement of account sufficient to allow the customer reasonably to identify the items paid. The statement of account provides sufficient information if the item is described by item number, amount, and date of payment.

M.G.L. c. 106, 4-406(a). "[T]he customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of a customer was not authorized." M.G.L. c. 106, 4-406(c). This statutory duty imposed on customers exists because the customer is in the best position to discover and report checks that contain unauthorized signatures. *Sullivan Surveying Co., LLC v. TD Bank, N.A.*, 2015 WL 4207133, *2 (D. Mass. July 10, 2015); *see also Grassi Design Grp., Inc.* v. *Bank of Am.,* N.A., 74 Mass. App. Ct. 456, 457, 908 N.E.2d 393, 395 (2009).

When the same unauthorized signer submits numerous checks against the same account, the customer has a duty to report the unauthorized signatures "after the customer has been afforded a reasonable period of time, *not exceeding 30 days*, in which to examine the item or statement of account and notify the bank." M.G.L. c. 106, § 4-406(d)(2) (emphasis added). If the customer fails to report the first unauthorized signed check within thirty (30) days, the customer is precluded from recovery for any additional checks containing unauthorized signatures by the same wrongdoer and paid in good faith before the bank has received notice from the customer. *Sullivan Surveying Co., LLC*, 2015 WL 4207133, *3; *Grassi,* 908 N.E.2d at 395 (citing M.G.L. c. 106, § 4-406(d)(2)).

Here, the Repeater Rule indisputably applies because Union Street claims that the same four unauthorized signers (Phelps, Battle, Cole and Godfrey) executed the 97 checks over a nearly four year period (November 2011 to July 2015). See Complaint at ¶ 31; *see also* Exhibit A

5

at pp. 2-6.  Moreover, Santander provided monthly bank statements to Union Street evidencing all 97 checks executed by the unauthorized signers.  *See* Exhibit B.  Union Street claims:

- Godfrey signed Check No. 1766 for $1,500, and the November 2011 bank statement evidences that check was drawn on Union Street's account on November 29, 2011.  *See* Exhibit A at p. 2; Exhibit B (November 2011 Bank Statement).

- Cole signed Check No. 1788 for $3,583.36, and the February 2012 bank statement evidences that check was drawn on Union Street's account on February 3, 2012.  *See* Exhibit A at p. 2; Exhibit B (February 2012 Bank Statement).

- Battle signed Check No. 1829 for $1,997.20, and the August 2012 bank statement evidences that check was drawn on Union Street's account on August 6, 2012.  *See* Exhibit A at p. 2; Exhibit B (August 2012 Bank Statement).

- Phelps signed Check No. 1917 for $299.88, and the November 2013 bank statement evidences that check was drawn on Union Street's account on November 15, 2013.  *See* Exhibit A at p. 3; Exhibit B (November 2013 Bank Statement).

Thus, applying the Repeater Rule, Union Street was required to notify Santander of the first unauthorized transactions by Godfrey, Cole, Battle and Phelps within thirty (30) days after Santander made available the November 2011, February 2012, August 2012 and November 2013 statements.  Union Street's first notice to Santander of checks executed by unauthorized signers was on November 2, 2015, which is years (not even remotely close to the thirty (30) day window afforded under § 4-406(d)(2)) after Santander sent the bank statements to Union Street.  *See* Exhibit A.

Thus, under the Repeater Rule, Union Street is precluded from recovering for any of the 97 checks executed by the unauthorized signers Phelps, Battle, Cole and Godfrey.

> B. **The One Year Rule Bars Union Street From Recovering for Any Checks Drawn on Union Street's Account Before One Year After Receiving the October 2014 Statement from Santander.**

Union Street is also barred from recovery with respect to 77 of the 97 checks because it failed to notify Santander within one year of Union Street's discovery of the checks executed by unauthorized signers. M.G.L. c. 106, 4-406(f). Under all circumstances, the One Year Rule of the Bank Statement Rule caps "reasonable promptness" to report check fraud at one year. A "banking customer has a duty to discover and report any unauthorized signatures or endorsements to the bank within one year." *Callahan v. Wells Fargo & Co.,* 747 F. Supp. 2d 247,252 (D. Mass. 2010); *see also Sullivan Surveying Co., LLC,* 2015 WL 4207133, *2.

This absolute time bar applies "[without regard to care or lack of care of either the customer or the bank." M.G.L. c. 106, 4-406(f). Different than a statute of limitations, this one year time frame "is a statutory prerequisite of notice. It does not govern the time within which an action must be commenced but rather governs the time within which a party to a contract is obligated to act." *Karmin Door Co.,* 2000 WL 559378 at *2. Accordingly, Massachusetts law clearly holds that a "customer who does not within one year…discover and report the customer's unauthorized signature…is precluded from asserting fit] against the bank." *Callahan,* 747 F. Supp. 2d at 252. Indeed, the Bank Statement Rule implements a one year notice period to limit bank liability because customers are most likely to notice fraudulent activity on their own account. *Grassi,* 908 N.E.2d at 395; *See also Karmin Door Co.,* 2000 WL 559378, at *4 (observing "[h]ad another employee of [plaintiff] monitored [its office manager's] activities and examined the statements during this period, he or she would have discovered the forgeries" in a timely fashion).

Here, Union Street first notified Santander of the 97 checks executed by unauthorized signers on November 2, 2015.  *See* Exhibit A.  Of the 97 checks, 77 of the checks appeared on bank statements sent by Santander to Union Street one year prior to Union Street first notifying Santander of the checks that were executed by Godfrey, Cole, Battle and Phelps.  *Id.* at pp. 2-7.  Accordingly, pursuant to the One Year Rule, Union Street is barred from recovering on the 77 checks of which Union Street had notice one year prior to Union Street's November 2, 2015 letter to Santander.

**III.   THE UCC DISPLACES UNION STREET'S COMMON LAW CLAIMS FOR NEGLIGENCE, FRAUD AND BREACH OF CONTRACT.**

Union Street alleges three common law claims arising from the 97 checks executed by Phelps, Battle, Cole and Godfrey:  Negligence (Count I); Fraud (Count II) and Breach of Contract (Count IV).

These common law claims are barred by the MA UCC because "the UCC provides a comprehensive scheme for enforcement of rights and allocation of losses that would be effectively undermined by application of conflicting common-law principles." *Reading Coop. Bank v. Suffolk Constr. Co.,* 464 Mass. 543,549,984 N.E.2d 776, 782 (2013); *Gossels v. Fleet Nat'l Bank*, 453 Mass. 366, 370, 902 N.E.2d 370 (2009); *Sullivan Surveying Co., LLC*, 2015 WL 4207133, *3.

Specifically, the MA UCC supplants common law claims in cases alleging check fraud that are governed by the Bank Statement Rule. *Cook,* 2012 WL 5240588, at *7-8 (collecting cases supporting that "[w]here a UCC provision specifically defines parties' rights and remedies, it displaces analogous common-law theories of liability" and dismissing negligence claim); *Cyran v. Sovereign Bank,* No. CIY.A. 07-40263-FDS, 2008 WL 2510146, at *4 (D. Mass. June 10, 2008) (finding § 4-406 preempts common law conversion claim); *Karmin Door Co, 2000*

8

Mass. Super. LEXIS 94 at 15 (stating UCC bars negligence claims in Bank Statement Rule cases); *Arkwright Mut. Ins. Co. v. State St. Bank & Trust Co.,* 428 Mass. 600, 606, 703 N.E.2d 217, 221 (1998) (dismissing negligence claim because § 4-406 "bars the bank's liability regardless of the theory on which plaintiff relies").

Because the Bank Statement Rule applies to this case, Union Street is barred from asserting any common law claims arising from the same series of unauthorized transactions.

### IV. ALTERNATIVELY, UNION STREET FAILS TO PLEAD SUFFICIENT FACTS TO SUPPORT PLAUSIBLE CLAIMS FOR NEGLIGENCE AND FRAUD.

Even if Union Street's common law claims somehow escape the clear statutory bars of the MA UCC, these claims still fail to sufficiently plead a plausible cause of action.

#### A. Santander's Holder in Due Course Status Protects It From Any Negligence Liability.

Even if a common law negligence claim is allowed, it is governed by the MA UCC because Union Street alleges a breach of duty pertaining to cashing a check with an unauthorized signature. *Cook,* 2012 WL 5240588, at *3. The viability of Union Street's negligence claim turns on whether Santander had the rights of a holder in due course when it cashed the checks signed by Phelps, Battle, Cole and Godfrey. *Id.* at *4. Santander was a holder in due course at presentment because it took these checks in good faith and exercised ordinary care. Without any facts plausibly showing that Santander was put on notice that checks were being executed by unauthorized signers, "the complaint fails to allege that the bank took the check as anything other than a holder in due course." *Id.* at *5. Thus, Count I must be dismissed.

#### B. Union Street's Fraud Claim Fails as it is Not Pled with Particularity.

Even if a common law fraud claim is allowed, to assert a claim of common law fraud, Union Street must allege injury resulting from a justifiable reliance on a Santander

9


misrepresentation. *In re: Neurontin Marketing, Sales Practices and Products Liability Litigation*, 618 F.Supp.2d 96, 108 (D. Mass. 2009). "One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation." *Restatement (Second) of Torts* § 525 (1977). At common law, misrepresentation made for the purpose of inducing reliance by one party upon the false statement is fraudulent. *In re: Neurontin,* 618 F.Supp.2d at 108.

Further, to survive a motion to dismiss pursuant to Fed. R. Civ. P. 9(b), a complaint alleging fraud must do so with particularity. The purpose of that standard is three-fold: (1) to place the defendants on notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to discovering a wrong or as a "strike suit"; and (3) to safeguard defendants from frivolous charges which might damage their reputations. *New England Data Servs., Inc. v. Becher,* 829 F.2d 286, 289 (1st Cir. 1987).

Here, Union Street has not alleged any misrepresentation made by Santander for the purpose of inducing Union Street to rely (or not rely) on a statement made by Santander. Further, Plaintiff's fraud claim does not allege with particularity as required by Fed. R. Civ. P. 9(b) the grounds supporting Plaintiff's claim that Santander committed fraud. Indeed, Count II of the Complaint merely identifies Union Street's claimed damages without providing any allegations to support a claim of fraud. Accordingly, Count II of the Complaint must be dismissed.

**V.     UNION STREET FAILS TO PLEAD ANY UNFAIR OR DECEPTIVE BUSINESS PRACTICE BY SANTANDER.**

Section 11 of the Massachusetts Consumer Protection Act extends consumer protection from "[u]nfair methods of competition and unfair or deceptive acts or practices" to businesses conducting commercial transaction. *Rhodes v. Ocwen Loan Servicing, LLC,* 44 F. Supp. 3d 137, 142 (D. Mass. 2014) (citing M.G.L. c. 93A, § 2(a) and § 11).

To prevail on a claim under Chapter 93A, a plaintiff must show "(1) a deceptive act or practice on the part of the defendant; (2) an injury or loss suffered by the consumer, and (3) a causal connection between the defendant's deceptive act or practice and the consumer's injury." *Shirokov* v. *Dunlap, Grubb* & *Weaver PLLC,* 2012 U.S. Dist. LEXTS 42787, 109 (D. Mass. Mar. 1, 2012).

Under Massachusetts law, a business practice may be considered "unfair" if it is "(1) within the penumbra of a common law, statutory, or other established concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to competitors or other business people." *Vieira,* 668 F. Supp. 2d at 292. Similarly, a practice can be considered "deceptive" if it "could reasonably be found to have caused a person to act differently from the way he otherwise would have acted." *Id.* Further, "in the context of disputes among businesses, where both parties are sophisticated commercial players, the objectionable conduct must attain a level of rascality that would raise an eyebrow to the rough and tumble of the world of commerce." *FranCounsel Grp., LLC v. Dessange Int 'l SA,* 980 F. Supp. 2d 1,7 (D. Mass. 2013).

Union Street does not allege facts plausibly showing an action or practice by Santander that could possibly be considered unfair or deceptive under c. 93A as a matter of Massachusetts law. To the contrary, Union Street merely concludes that Santander "engaged in unfair or

11

deceptive practices." Indeed, Union Street never alleges a single fact plausibly showing how Santander acted in an "immoral, unethical, oppressive, or unscrupulous" way that could be deemed "unfair". *See Vieira,* 668 F. Supp. 2d at 292. Nor has Union Street asserted facts plausibly showing that Santander acted with any intent to defraud or oppress Union Street while servicing its account or cashing checks drawn on that account. Finally, Union Street has not alleged any conduct that can be considered immoral, dishonest or objectionable, especially considering that the checks were cashed in the ordinary course of business.

Union Street cannot merely state "[t]hreadbare recitals of the elements" and sufficiently plead a c. 93A cause of action. *See Bell Atlantic Corp.,* 550 U.S. at 555. Without any plausible facts to support any unfair or deceptive business practice by Santander, or show causation, Union Street's claim must be dismissed.

## CONCLUSION

WHEREFORE, Santander respectfully request that this Honorable Court grant its motion to dismiss the Plaintiff's Complaint in its entirely with prejudice.

**SANTANDER RESPECTFULLY REQUESTS A HEARING ON ITS MOTION.**

        Respectfully Submitted,

        **PARKER IBRAHIM & BERG LLC**
        *Attorneys for Defendant,*
        Santander Bank, N.A.


        */s/ Jeffrey D. Adams*
        Jeffrey D. Adams, BBO # 662697
        One Financial Center, 15th Floor
        Boston, MA 02111
        Phone: 617.918.7600
        Facsimile: 617.918.7878
        Email: jeffrey.adams@piblaw.com

Date: March 9, 2016

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(2)

I, Jeffrey D. Adams, hereby certify that, prior to filing the instant motion, I attempted to contact counsel for the Plaintiff in order to confer in good faith to resolve or narrow the issues raised herein.

                                              */s/ Jeffrey D. Adams*
                                              Jeffrey D. Adams

## CERTIFICATE OF SERVICE

I, Jeffrey D. Adams, hereby certify that a true and correct copy of the foregoing document was served upon all parties or counsel of record via this Court's CM/ECF system or, if not registered on this Court's CM/ECF system, then via first class mail, postage prepaid, on March 9, 2016.

                                              */s/ Jeffrey D. Adams*
                                              Jeffrey D. Adams