UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


| | | |
|---|---|---|
| UNION STREET CORRIDOR- | ) | |
| COMMUNITY DEVELOPMENT | ) | |
| CORPORATION | ) | |
| | ) | |
| Plaintiff | ) | CIVIL ACTION NO. |
| | ) | 16-10441-DPW |
| v. | ) | |
| | ) | |
| SANTANDER BANK, N.A. | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER
June 13, 2016

Before me is a Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) regarding a bank check matter governed by the Uniform Commercial Code. Plaintiff Union Street Corridor-Community Development Corporation alleges that defendant Santander Bank, N.A. caused it injury by cashing 97 checks submitted by individuals associated with Union Street who were not authorized signatories on the Union Street account held at Santander. I conclude that Union Street may not collect on any of its claims related to the checks in question. I will therefore grant Santander's motion to dismiss this case.

**I. BACKGROUND**

In October of 2007, Union Street opened a business bank

account with Santander.  As part of the standard signup process,
Union Street identified certain affiliated individuals as
authorized signatories for the account by listing them on a
signature card.  From November 29, 2011 to July 13, 2015, three
unauthorized board members, Michael Phelps, Norman Cole, and
Edward Battle, and one non-board member, Steve Godfrey, are
alleged to have signed checks for payment from the account.  In
all, it appears they signed 97 checks — the value of which
totaled $143,191.77 — that were ultimately paid out of Union
Street's account by Santander.

The dates of the first checks signed by each individual
were as follows:[1]

- Godfrey – November 29, 2011

- Cole – February 15, 2012

- Battle – August 6, 2012

- Phelps – November 15, 2013

---

[1] For this information, I rely on submissions attached by
Santander to its Motion to Dismiss that were not originally
included with the complaint: specifically, Union Street's
November 2 Demand Letter, copies of the checks in question, and
the bank statements that Santander sent to Union Street every
month during the period in question.  Normally, extra-pleading
submissions cannot be considered under Rule 12(b)(6).  However,
the First Circuit has recognized some exceptions to this rule.
These exceptions include documents "the authenticity of which
[is] not disputed by the parties," documents that are "central
to plaintiffs' claim" and "documents sufficiently referred to in
the complaint."  *Watterson* v. *Page*, 987 F.2d 1, 3-4 (1st Cir.
1993).  These materials fall within those exceptions.

At no point had any of those individuals been added to the signature card on file with Santander for Union Street's account.

During the period in question, Santander sent Union Street monthly statements detailing all of the check payments.  On November 2, 2015 — apparently after a change in leadership — Union Street sent Santander notice that the 97 checks in dispute had been signed by unauthorized persons.

Union Street asserts four state law claims against Santander.  Claim I is a claim for common law negligence, alleging that Santander did not comply with applicable law or its own policies in allowing the checks to be paid despite being signed by unauthorized signees.  Claim II is for fraud.  In this claim, however, Union Street does not adequately plead fraud. It simply lists some of the consequences of the payment of the checks, and restates its allegation that Santander paid the checks without determining whether the signatures on them were authorized.  Claim III alleges a violation of Massachusetts General Laws Chapter 93A.  Union Street claims that the terms of the agreement it had to sign in order to open an account were deceptive and unfair, and that Santander breached its own agreement by allowing payment of checks signed by unauthorized persons.  Count IV alleges breach of contract based on the same underlying agreement.

3

## II. ANALYSIS

In support of its motion to dismiss, Santander makes two main arguments.

The first is that Union Street should be prevented from collecting anything on its common law claims because the UCC displaces common law claims such as the ones alleged here.[2]  The second is directed to the Chapter 93A claim; Santander argues that Union Street has failed adequately to allege any unfair or deceptive business practices undertaken by Santander.

### A.   *UCC*

Santander contends UCC provisions dictate that plaintiffs in Union Street's situation may not recover on claims against a bank.  Santander cites two specific rules in support of this contention.  Before analyzing the specific UCC rules themselves, however, I will first address whether as a general proposition the UCC displaces common law theories of liability.

In Massachusetts, "[c]heck collection is governed by the UCC," and, in the check collection context, "[w]here a UCC provision specifically defines parties' rights and remedies, it

---

[2] Santander also argues, in the alternative, that, even if I were not to agree with its interpretation of the UCC provisions it cites, I should at least dismiss the claim for fraud either because Santander is a holder in due course, or because Union Street has not pleaded its fraud claim with the particularity required under Rule 9(b).  I do not reach those arguments.

displaces analogous common-law theories of liability." *Gossels*
v. *Fleet Nat. Bank*, 453 Mass. 366, 370, 902 N.E.2d 370, 376
(2009).  This approach has been adopted under the UCC so that
banks do not "face a motley patchwork of liability standard from
State to State."  *Id.*  The UCC also applies where it "provides a
comprehensive scheme for enforcement of rights and allocation of
losses that would be effectively undermined by application of
conflicting common-law principles." *Reading Co-Op. Bank* v.
*Suffolk Constr. Co.*, 464 Mass. 543, 549, 984 N.E.2d 776, 781-82
(2013) (citation omitted).  Article 4 of the UCC, as adopted by
Massachusetts in Chapter 106 of the Massachusetts General Laws,
which covers bank deposits and collections, provides just such a
scheme in this context.

    1.  One Year Rule

    The One Year Rule of Article 4 requires that a customer
report any unauthorized signatures or endorsements to her bank
within one year of the unauthorized act in question.  *See* Mass.
Gen. Laws Ann. ch. 106, § 4-406(f) (West).  As long as the bank
has been providing regular statements to the customer, if one
year has passed since the unauthorized transaction in question,
the customer is "precluded from asserting against the bank the
unauthorized signature."  *Id.*

    This rule applies "[w]ithout regard to care or lack of care
of either the customer or the bank."  *Id.*  "The one-year period

in [section (f)] is not a statute of limitations which might not start to run until the plaintiff knew or should have known of [his injury]." *Arkwright Mut. Ins. Co.* v. *State Street Bank & Trust Co.*, 428 Mass. 600, 605, 703 N.E.2d 217, 221 (1998). "{I]t necessarily follows that the discovery rule is . . . inapplicable." *Id.* at 606.  These rules were developed to ensure "finality in check fraud litigation." *Id.* at 603 (citation omitted).

Union Street did not notify Santander of the alleged unauthorized checks until November 2, 2015.  Consequently, a claim based on any check that would have appeared on Union Street's monthly statement before November 2, 2014, is barred by the One Year Rule.  It is undisputed that Santander issued monthly statements at the end of every calendar month.  As a result, claims based on any check cashed before (and not including) the November 4, 2014 check are barred by the One Year Rule.  I note at this point that there were 21 checks cashed after that date, collection on which would not be precluded by the One Year Rule.  I will turn to those checks in the next subsection.

However, as pertinent to this subsection, the claims arising from the 76 checks that are subject to the One Year Rule are not saved by Union Street's argument that a discovery rule should apply.  It is clear from both the language of the statute

6

and the case law that the one-year period established in § 4-
406(f) governs as a statute of repose without consideration of
the timing of discovery, so long as the bank continued to send
its client regular statements.  The undisputed documentation
properly submitted in connection with the motion to dismiss
demonstrates that Santander did just that.

Accordingly, Union Street is precluded from collecting on
any claims related to any of the pre-November 4, 2014 checks.
This leaves the 21 checks cashed after the cutoff date to be
considered.  As will appear in the next subsection, recovery on
these checks is barred by another UCC rule: the Repeater Rule.

2.   Repeater Rule

The Repeater Rule of Article 4 bars claims against a bank
for subsequent fraudulent checks signed by the same person
unless the customer gives notice of the fraud to the bank within
30 days of the original fraudulent check.  If a bank, as
Santander did here, sends regular statements to the customer,

> [t]he customer must exercise reasonable promptness in
> examining the statement . . . to determine whether any
> payment was not authorized . . . because a purported
> signature by or on behalf of the customer was not
> authorized.  If, based on the statement or items
> provided, the customer should reasonably have
> discovered the unauthorized payment, the customer must
> promptly notify the bank of the relevant facts.

Mass. Gen. Laws ch. 106, § 4-406(c) (West).  The reasonable
promptness required in subsection (c) has been interpreted to

mean a period "not exceeding 30 days" after the customer has received her statement.  *See* Mass. Gen. Laws ch. 106, § 4-406, cmt. 2 (West).  This requirement was codified because "the customer is in the best position to discover and report forgeries." *Grassi Design Grp., Inc.* v. *Bank of Am., N.A.*, 74 Mass. App. Ct. 456, 457-58, 908 N.E.2d 393, 395 (2009).

However, "[a]s an exception, comparative fault applies where 'the customer proves that the bank failed to exercise ordinary care in paying the item and that the failure substantially contributed to loss.'" *Sullivan Surveying Co., LLC* v. *TD Bank, N.A.*, No. 15-cv-11819-RGS, 2015 WL 4207133, at *2 (D. Mass. July 10, 2015).  But if the plaintiff alleges that the bank failed to exercise ordinary care, it bears the burden of pleading and establishing that fact. *Grassi*, 908 N.E.2d at 395.  Ordinary care is defined to be acting under "reasonable commercial standards." *Id.* (citing Mass. Gen. Laws ch. 106, § 3-103(a)(7)).  These reasonable commercial standards are, in turn, defined as "general banking usage not disapproved by" other provisions of the UCC.  Mass. Gen. Laws ch. 106 § 4-103. And general banking usage means practices "common to banks in the area concerned" or "followed generally throughout [the] state." *Id.* at cmt. 4.

If I were to find that the Repeater Rule applies, claims arising from any of the remaining 21 checks would be precluded.

This is because all of the remaining 21 checks cashed within one
year of the notice Union Street sent Santander were signed by
unauthorized signatories who had previously signed fraudulent
checks well more than 30 days before.

Neither party disputes the fact that these remaining checks
are subject to the Repeater Rule.  Union Street instead contends
that Santander's practices in ensuring the authenticity of
signatures on checks which they pay fall below the standards of
ordinary care as defined by the UCC.  If that were the case,
then the Repeater Rule would not apply, and liability for the
damages caused by the checks would be apportioned based on a
comparative fault scheme.

In its reply, Santander argues that Union Street may not
invoke this exception to the Repeater Rule, because Union Street
suffered no actual loss.  It contends that, because the checks
were all paid to entities with which Union Street would or did
normally do business, there was no apparent loss suffered, and
all of the checks were paid in due course of Union Street's
business.  As threshold matter, I find that whether any of these
checks were for legitimate business expenses to be a fact
question beyond the scope of motion to dismiss practice.  The
allegation that the unauthorized, albeit affiliated, individuals
in question, as enabled by Santander in the process, executed

checks without company approval is sufficient to support a
damages claim.

Nevertheless, I also conclude that, regardless of any
question of injury, Union Street has not adequately pleaded that
Santander failed to act with the ordinary care normally
exhibited by banks in its position.  The only mention of such
banking standards is a cursory reference in briefing to one
other bank's electronic check comparison system.  And the single
case on which Union Street relies in that briefing for its
conclusion is based on behavior far more egregious than anything
Union Street alleges here.

In *Govoni & Sons Construction Co., Inc.* v. *Mechanics Bank*,
the bank in question had a practice of saving time on busy days
by having its banking tellers simply "fan" through stacks of
checks deposited simultaneously, only looking to see whether
each check had been signed and indorsed.  51 Mass. App. Ct. 35,
37, 742 N.E.2d 1094, 1098 (2001).  The tellers did not examine
the checks, look to see to whom the check was made out, or
question the customer.  In fact, in Govoni, the teller failed to
recognize a number of unendorsed checks.  This was because, on
particularly busy days, the tellers entirely dispensed with the
practice of even fanning the checks and simply deposited them
with no questions or inspection.

Union Street has made no allegation that Santander's practices approximate that lack of care.  Moreover, making passing reference — unalleged in the complaint — to the electronic payment system of one of the largest banks in the country in an opposition to a motion to dismiss is insufficient to plead that such top-of-the-line security systems are in common usage, let alone standard security protocol in Massachusetts.  In short, there is nothing in the pleadings to support the conclusory allegation that Santander's check certification procedures fell below the standards of ordinary care.  The checks in question here would likely have seemed legitimate to even a reasonably diligent teller.  They were almost all from Union Street to other businesses, signed by board members or other affiliated individuals, and bore no red flags that would or should have indicated that a security specialist should specially review them.

In conclusion, I find that the Repeater Rule applies to all claims based on the 21 checks not barred by the One Year Rule.  Therefore, Union Street is precluded from collecting on any of those checks.

### B.   *Chapter 93A*

Although the UCC displaces common law claims, it does not necessarily displace those based on statutes, such as Union Street's Chapter 93A claim.  Therefore, even though Union

Street's common law theories of recovery based on the checks are all barred by UCC rules, its Chapter 93 claim might still proceed if I find that Union Street has adequately pleaded that Santander engaged in unfair or deceptive practices.

In order to prevail on a Chapter 93A claim, the plaintiff must show "1) a deceptive [or unfair] act or practice on the part of the defendant; 2) an injury or loss suffered by the plaintiff; and 3) a causal connection between the defendant's deceptive act or practice and the plaintiff's injury." *Tyler* v. *Michaels Stores, Inc.*, 840 F. Supp. 2d 438, 448 (D. Mass. 2012) (citing *Hershenow* v. *Enterprise Rent-A-Car Co. of Boston, Inc.*, 445 Mass. 790, 797, 840 N.E.2d 526, 532 (2006)).

Under Chapter 93A, an act or practice is "unfair" if it is "(1) within the penumbra of a common law, statutory, or other established concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to competitors or other business people." *Id.* (quoting *Milliken & Co.* v. *Duro Textiles, LLC*, 451 Mass. 547, 563, 887 N.E.2d 244, 259 (2008)).

In its complaint, Union Street alleges that the language found in the agreement[3] it made with Santander to open the

---

[3] The Agreement was attached to Santander's reply to Union Street's opposition.  I may consider it here for the reason stated in footnote 1.

account was deceptive and unfair.  The provision in question

states in relevant part:

> If you are a sole proprietor, you and any other
> authorized signers you designate must sign our
> signature card when you open an account.  Otherwise,
> the authorized signers you designate must sign our
> signature card when you open an Account.  If you
> designate more than one authorized signer, each
> authorized signer must complete and sign our signature
> card. . . .  We **may** rely upon the documentation we
> have in our files regarding the identity of the
> authorized signers on your Account until you present
> appropriate documentation identifying other authorized
> signers.  If we do not obtain the information we need
> under our Customer Identification Program, we reserve
> the right to prevent you from accessing the funds in
> your Account until we obtain that information, and you
> agree we will not be liable to you if your check or
> other payment order is not paid during this time.

Santander Bank Business Deposit Account Agreement, Part A,

Subsection 2, (emphasis added).  A later subsection of the

Agreement states:

> You agree to examine your statement promptly after you
> receive it or we make it available to you.  Unless we
> hear otherwise from you within 30 calendar days . . .
> from the date we mailed the statement or made it
> available to you, we will deem the statement and all
> transactions reflected therein, including the payment
> of any check or the amount of any deposit, to be
> accurate and proper. . . .  In addition, if you fail
> to notify us of any unauthorized items(s) within 30
> calendar days . . . from the date we mailed the
> statement reflecting the first unauthorized item(s) or
> made it available to you, we are not required to
> reimburse you for unauthorized items caused by the
> same person that appear on the statement or any
> subsequent statements.

*Id.*, Subsection 13.

I find nothing in this plain language or in Santander's
later conduct that could be described as deceptive under Chapter
93A.  The Agreement is quite clear in its apportionment of
responsibility with regard to authorization of checks.  It is
evident from the wording of the Agreement that Santander
maintains the signature card containing authorized signatures
for its own records and internal security purposes.  Santander
makes no promise to check the authorization card for every
transaction, and is thus not acting deceptively or unfairly when
it deems such measures unnecessary, so long as it acts
consistently with the UCC.  The signature cards exist in order
for Santander to have a foundation in its security process to
identify a possible forgery and then to refuse to pay out on a
check.  But their existence does not promise more extensive
security measures.

The other provisions of the contract, read in a common
sense fashion, make it clear that Union Street is in large part
responsible for the policing of its own account to thwart any
potential unauthorized transaction.  The fact that it was board
members who were taking part in this alleged scheme does not
change the fact that Union Street's own oversight mechanisms (or
lack thereof) were the fundamental cause of the unauthorized
check payments.  The Agreement makes clear that Union Street has
a responsibility to review its own statements.  The Agreement is

consistent with the wording and structure of the UCC rules
regulating this type of transaction, and the case law that has
analyzed those rules.  The rules and the related case law
reflect a considered public policy allocating the burdens of
policing against unauthorized check writing.  No bank, Santander
included, is required under the UCC to be a general insurer
against lack of diligence by its customer.  Reallocating the
respective burdens — and the associated costs — must be the
subject of legislative action, not *ad hoc* judicial
recalibration.

Nothing about the contemplated relationship between
Santander and Union Street was unfair or deceptive.  Union
Street should have been aware that Santander was not obligated
to check the signature card for every, or indeed any,
transaction.  And nothing in Santander's conduct could be deemed
unfair.

Union Street's lack of oversight cannot be blamed on its
bank.  Apparently, new management at Union Street has taken over
and realizes that past funds have been spent irresponsibly, or
perhaps even embezzled.  But if recourse must be had, it should
be sought from the individuals who enabled and/or signed the
unauthorized checks and not from a bank that, from all that is
alleged, performed its duties in a way that was neither unfair
nor fell below accepted standards of care in Massachusetts.

### III. CONCLUSION

For the foregoing reasons, I GRANT the Defendant's Motion
to Dismiss, and dismiss all claims in the complaint.


*/s/ Douglas P. Woodlock*_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE